IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

BUTCH STEWART,                              *

     Plaintiff,                            *

        v.                                 *                    Civil Action No. RDB-14-03567

THE CITY OF BALTIMORE, *et al.*             *

                                                     *

     Defendants.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## **MEMORANDUM OPINION**

Plaintiff Butch Stewart ("Stewart" or "Plaintiff") brings this *pro se* action against Defendants Mayor and City Council of Baltimore ("the City"),[1] Larry Greene ("Greene"), Mayor Stephanie Rawlings-Blake ("Rawlings-Blake"), Marguerite Murray ("Murray"), and Baltimore City Councilman Robert Curran ("Curran"), and Antoine Banks ("Banks")

---

[1] Plaintiff identifies this party separately as "The City of Baltimore," "Baltimore City Hall" and "Mayor of Baltimore." See Compl., ECF No. 1. The proper name for this entity is "Mayor and City Council of Baltimore." Baltimore City Charter, Art. 1, §1 (2010). The "City of Baltimore," "Baltimore City Hall," and "Mayor of Baltimore" are not legal entities and therefore lack the capacity to be sued. *See Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 393 (4th Cir. 2014) *cert. denied sub nom. Baltimore City Police Dep't v. Owens*, 135 S. Ct. 1893 (2015) (citing *Boyer v. State*, 323 Md. 558, 594 A.2d 121, 128 n.9 (1991)).   The Baltimore City Charter states, "[t]he inhabitants of the City of Baltimore are a corporation, by the name of the 'Mayor and City Council of Baltimore,' and by that name . . . may sue and be sued." *Id.* Maryland law is not unique in this designation, as federal courts have traditionally recognized that individual government departments lack the capacity to be sued. *See, e.g., Strebeck v. Baltimore Cnty. Police Dept.*, Civ. A. No. JFM–05–2580, 2005 WL 2897932, at *1 (D. Md. Oct. 17, 2005) (holding that neither the Baltimore County Police Department nor the Baltimore County Council can be sued); *Adams v. Calvert Cnty. Pub. Schools*, 201 F. Supp. 2d 516, 520 n.3 (D. Md. 2002) (holding that a school district cannot be sued); *James v. Frederick Cnty. Pub. Sch.*, 441 F. Supp. 2d 755, 758 (D. Md. 2006) (concluding that the Frederick County Fire Department and public schools cannot be sued). As Plaintiff's Complaint names the "City of Baltimore," "Baltimore City Hall," and "Mayor of Baltimore," these defendants must be dismissed in accordance with Maryland law, and the entity "Mayor and City Council of Baltimore" will be substituted for these parties as a defendant to this action. Pursuant to the separate Order that follows, the Clerk of the Court is directed to re-caption the case accordingly.

(collectively, "Defendants"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, 42 U.S.C. § 1983 ("§ 1983"), as well as various state law claims.

Pending before this Court is Defendants' Motion to Dismiss (ECF No. 9). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, Defendants' Motion to Dismiss (ECF No. 9) is GRANTED and this case is DISMISSED.

<u>BACKGROUND</u>

In ruling on a motion to dismiss, this Court must accept the factual allegations in the plaintiff's complaint as true and construe those facts in the light most favorable to the plaintiff. *See, e.g., Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Moreover, a *pro se* litigant's complaint should not be dismissed unless it appears beyond doubt that the litigant can prove no set of facts in support of his claim that would entitle him to relief. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Yet, a plaintiff's status as *pro se* does not absolve him of the duty to plead adequately. *See Stone v. Warfield*, 184 F.R.D. 553, 555 (D. Md. 1999) (citing *Anderson v. Univ. of Md. Sch. Of Law*, 130 F.R.D. 616, 617 (D. Md. 1989), *aff'd*, 900 F.2d 249, 1990 WL 41120 (4th Cir. 1990)).

This action arises out of alleged discrimination and sexual harassment directed at Plaintiff Stewart, a gay African-American male, while he was an employee of the City. Compl. ¶ 4, ECF No. 1. In May 2012, Stewart began his employment as a Fiscal Policy Analyst and Fiscal Officer under the direct supervision of Defendant Larry Greene. *Id.* ¶ 13.

Near the end of July 2012, Plaintiff complained to Greene that he had received harassing phone calls to his office number, in which an individual would call his phone

number and immediately hang up after Stewart answered the call. *Id.* ¶ 17. Stewart's phone

number was subsequently changed as the calls could not be traced. *Id.*

In October 2012, Stewart claims that Defendant Marguerite Murray entered his office

in the evening after the work day wearing only a bathing suit, flirted with him, and looked at

his "gentile [sic] region." *Id.* ¶ 18. After this incident, Plaintiff alleges that Murray continued

to flirt with Stewart in the following months while implying that Stewart was a homosexual.

*Id.* Plaintiff did not report any harassment by Murray to a supervisor until June 2014, over

one and a half years later. *Id.* ¶ 49.

In mid-March 2013, the Plaintiff alleges that Greene received a request from an

unknown individual at the office of the President of Baltimore City Council asking that

Stewart be removed as lead analyst of the City Council's Budget and Appropriations

Committee. *Id.* ¶ 21. Plaintiff was not removed. *Id.* The following month, an unidentified co-

worker allegedly entered his office and searched his briefcase, where he or she discovered

Stewart's prescription medication and shared this information with other office members. *Id.*

¶ 22.

Plaintiff further alleges that Defendant Curran stood inappropriately near Stewart

during a budget hearing in May 2013, specifically placing his "genital region in close

proximity to Plaintiff's face." *Id.* ¶ 23. Shortly thereafter, Stewart claims that the City

Council President harassed him when he was ordered to dispose of a dead cockroach. *Id.* ¶

24. Additionally, Stewart alleges that his personal home computer had been "compromised"

and that information collected identifying Stewart's homosexuality had been communicated

to unnamed Councilmembers and staff. *Id.* ¶ 27.

In August 2013, Stewart alleges that Defendant Antoine Banks assaulted him when Banks made contract with him in the hall. *Id.* ¶ 30. Stewart claims an assault of a "similar nature" occurred two weeks later. *Id.* After Stewart reported these alleged incidents to Greene the next month, Banks apologized for the previous contact. *Id.* ¶ 31. Greene also directed Banks to apologize if similar events occurred in the future and instructed Stewart to contact the Employee's Assistance Program. *Id.* Stewart subsequently filed a report with the Baltimore City Department of Human Resources ("DHR") and a complaint with the Baltimore City Police Department ("BCPD") in September 2013. *Id.* ¶¶ 31, 34. The DHR found the report unsubstantiated, whereas the BCPD elected not to follow up on Stewart's allegations. *Id.* ¶¶ 31, 34. In March 2014, Stewart retained counsel regarding the assault, and that counsel also found the allegations unsubstantiated. *Id.* ¶¶ 41, 44. At the same time, Plaintiff contends that his job duties were reduced to clerical work, *Id.* ¶ 28, while Greene filed written warnings on Stewart's tardiness, and "yelled at Plaintiff" for not saying hello or acknowledging him. *Id.* ¶¶ 28, 29, 32.

In September 2013, Plaintiff filed for leave under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 (2006). Compl. ¶ 36. He began his FMLA leave in November 2013. *Id.* Plaintiff alleges that at or around this time, his work-stress related medical conditions necessitated the services of a psychologist, his circulatory system became inflamed, he suffered from chest pain, and "he began cracking his fingers so frequently and vigorously because of the stress that he broke his left ring finger." *Id.* ¶¶ 33, 35, 38, 40.

After Stewart returned to work in February 2014, Greene and a DHR coordinator offered him severance pay, which he declined. *Id.* ¶ 45. He alleges that he was subsequently

the victim of further harassment and retaliatory behavior. *Id.* Murray allegedly began to lie about Stewart's conduct towards her in April and May 2014. *Id.* ¶ 47. After Stewart reported to Greene that Murray had sexually harassed him, Greene suspended Stewart in June 2014. *Id.* ¶ 49. A pre-termination hearing was then held at which Stewart was again offered severance pay. *Id.* ¶ 50. Stewart claims that the compensation was to be in exchange for indemnification of the Defendants. *Id.* Stewart declined the offer. *Id.* He was ultimately terminated in June 2014. *Id.* ¶ 51. In May of 2014 Stewart filed a charge of discrimination with the United States Equal Opportunity Commission ("EEOC"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* The EEOC denied his claim and issued a right-to-sue letter dated August 14, 2014, although Plaintiff's filings with this Court claim he received the letter on August 20. *See* Compl. Attachs. 1, 2, ECF Nos. 1-2, 1-3.

Plaintiff subsequently filed the present action in this Court pursuant to federal question jurisdiction under 28 U.S.C. § 1367. Plaintiff asserts numerous violations of federal and state law. Specifically, he contends he suffered employment discrimination on the basis of gender, race, and national origin under Title VII (Counts I, IV, and V). Further, Plaintiff asserts that he was deprived of his constitutional rights under 42 U.S.C. § 1983, due to his gender, race, and national origin (Count II). Stewart also alleges state law claims for wrongful termination and implied contract (Count III), and intentional infliction of emotional distress (Count IV). Finally, he asserts a claim of assault and battery solely against Defendant Banks (Count VI). Defendants have moved to dismiss all Counts. *See* Mot. to Dismiss, ECF No. 9.

## STANDARD OF REVIEW

### A. Motion to Dismiss Under Rule 12(b)(1) of the Federal Rules of Civil Procedure

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). This challenge under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). A plaintiff carries the burden of establishing subject matter jurisdiction. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

With respect to a facial challenge, a court will grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799. Where the challenge is factual, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. "[T]he court may look beyond the pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003) (citation omitted). The court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Sharafeldin v. Maryland Dept. of Public Safety & Correctional Services*, 94 F. Supp. 2d 680, 684-85 (D. Md. 2000).

6

**B. Motion to Dismiss Under Rule 12(b)(6) of the Federal Rules of Civil Procedure**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim). In the context of *pro se* litigants, however, pleadings are "to be liberally construed," and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted); *accord Brown v. N.C. Dept. of Corr.*, 612 F.3d 720, 724 (4th Cir. 2010).

7

Second, even a *pro se* complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679; *see also O'Neil v. Ponzi*, 394 F. App'x. 795, 796 (2d Cir. 2010). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Although the plausibility requirement does not impose a "probability requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim. It need only *allege facts* sufficient to *state* elements of the claim." (emphasis in original) (internal quotation marks and citation omitted)).

In the employment discrimination context, this pleading standard should not be "onerous." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 764 (4th Cir. 2003). The Supreme Court has indicated that an employment discrimination plaintiff need not plead particular facts conclusively satisfying each element of a prima facie case. *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002).[2] *Swierkiewicz*, however, did not abrogate the requirement that the plaintiff allege "facts *sufficient* to state *all* the elements of her claim." *Bass*, 324 F.3d at 765 (emphasis added); *see Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (explaining that *Swierkiewicz* does not nullify the heightened pleading requirements of

---

[2] Although the general 12(b)(6) standard used in *Swierkiewicz* was overruled by *Twombly*, *see Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009), the analysis cited here remains good law. *Reed v. Airtran Airways*, 531 F. Supp. 2d 660, 666 (D. Md. 2008) ("The *Twombly* Court made clear that its holding did not contradict the *Swierkiewicz* rule that 'a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a *prima facie* case of discrimination.'" (citations omitted)).

*Twombly* and *Iqbal*); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) ("[T]he Supreme Court's holding in *Swierkiewicz v. Sorema* did not alter the basic pleading requirement that a plaintiff set forth facts sufficient to allege each element of his claim." (internal citation omitted)).

Even with the degree of flexibility arguably given to employment discrimination plaintiffs, the court must consider whether plaintiff's complaint has met the plausibility requirement of *Twombly* and *Iqbal. See Miller v. Carolinas Healthcare System*, 561 F. App'x 239, 241 (4th Cir. 2014) (explaining that, in the Fourth Circuit, "*Swierkiewicz* left untouched the burden of a plaintiff to allege facts sufficient to state all elements of her claim." (internal quotation marks and citation omitted)). In making this assessment, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 679. "At bottom, a plaintiff must nudge [its] claims across the line from conceivable to plausible to resist dismissal." *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (internal quotation marks omitted).

## ANALYSIS

### I.     Title VII of the Civil Rights Act of 1964 (Counts I, IV & V)[3]

#### A.  No Liability under Title VII for Individual Defendants

Under Title VII of the Civil Rights Act, it is well established that "supervisors are not liable in their individual capacities for Title VII violations." *Lissau v. Southern Food Servs., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998). In *Lissau*, the United States Court of Appeals for the Fourth Circuit held that only an employer may be held liable for Title VII violations,

---

[3] Count IV alleges both federal and state law claims. Those parts of Count IV related to Title VII will be dealt with here, while those parts sounding in state law will be discussed *infra.*

whereas individual liability under the Act "would improperly expand the remedial scheme crafted by Congress." *Id.* As such, Stewart has failed to state a claim for relief under Title VII against Defendants Greene, Rawlings-Blake, Murray, Curran, and Banks. The Title VII claims (Counts I and V) are thereby DISMISSED as to Greene, Rawlings-Blake, Murray, Curran, and Banks.

### B. The Mayor and City Council of Baltimore

#### i. Timeliness and Failure to Exhaust Administrative Remedies

The Mayor and City Council of Baltimore argue that Stewart failed to exhaust administrative remedies for his Title VII claims, thereby necessitating dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This argument should, in fact, be analyzed under Rule 12(b)(1), as a motion to dismiss for failure to exhaust administrative remedies is an argument that this Court lacks subject matter jurisdiction. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003). A court will grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799.

Prior to filing a Title VII claim in federal court, "a plaintiff must first exhaust his administrative remedies by filing a charge of discrimination with the EEOC." *Edelman v. Lynchburg College,* 228 F.3d 503, 506 (4th Cir. 2000). In Maryland, a deferral state,[4] a Title VII claim of discrimination must be filed with the EEOC within 300 days of the alleged discriminatory action. 42 U.S.C. § 2000e–5(e)(1). "If a charging party fails to comply with

---

[4] A deferral state is one with "a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof." 42 U.S.C. § 2000e–5(e)(1); 29 U.S.C. § 626(d)(2). Maryland is classified as a deferral state because the Maryland Commission on Human Relations constitutes a state agency that is capable of providing relief from discrimination.

this statutorily mandated filing period, alleged discriminatory acts which occurred more than 300 days prior to the filing of the EEOC charge may not subsequently be challenged in a Title VII suit." *Van Slyke v. Northrop Grumman Corp.*, 115 F. Supp. 2d 587, 592 (D. Md. 2000) *aff'd,* 17 F. App'x 154 (4th Cir. 2001); *see also Beall v. Abbott Laboratories,* 130 F.3d 614, 620 (4th Cir. 1997) ("[i]ncidents outside the statutory window are time-barred"). Courts strictly enforce the timeliness requirements that govern actions alleging employment discrimination. *Tangires v. Johns Hopkins Hosp.,* 79 F. Supp. 2d 587, 597 (D. Md. 2000); *see also Christian v. City of Annapolis,* Civ. A. No. JFM–06–1119, 2006 WL 2294539, at *1 (D. Md. Aug. 9, 2006) (dismissing discrimination claim as untimely because it was not filed with the EEOC until 301 days after the alleged discriminatory act); *Langford v. Yale Univ. School of Medicine,* 39 F. App'x 683, 685 (2d Cir. 2002) (affirming dismissal of discrimination claim that was filed with the EEOC two days after the 300 day deadline).

Stewart alleges that he filed his charge of discrimination in May 2014, however the original charge has not been located. *See* Compl. ¶ 11. Assuming he did file in May 2014, any sex-based discrimination or retaliation incidents occurring before July 5, 2013 are barred.[5] As the "time limitations period commence[s] with the date of the alleged 'unlawful employment practice'" and "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations period," *Del. State Coll. v. Ricks*, 449 U.S. 250, 261-62 (1980) (citations omitted), any alleged incidents before this date occurred more than 300 days prior to Stewart's EEOC filing. Stewart has thus failed to exhaust his administrative remedies for such alleged incidents. The unexhausted allegations

---

[5] As Plaintiff does not provide the specific date on which he filed his charge with the EEOC, this Court will assume that the alleged EEOC charge was filed May 1st.

11

consist of the hang up calls (July 2012), Murray's entrance into Stewart's office in a bathing suit (October 2012), the riffling through the Plaintiff's briefcase (April 2013), the alleged inappropriate behavior by Curran (May 2013), and the alleged cockroach disposal (May 2013).

As Stewart has not satisfied the prerequisite of administrative exhaustion for any alleged discrimination occurrences before July 5, 2013, this Court may not exercise subject matter jurisdiction over the associated claims. *Johnson v. State of Md.*, 940 F. Supp. 873, 875 (D. Md. 1996) *aff'd,* 113 F.3d 1232 (4th Cir. 1997); *Davis,* 367 F. Supp. 2d at 799. Accordingly, such claims are DISMISSED WITH PREJUDICE. The only allegations against the Mayor and City Council of Baltimore properly exhausted are the August 2013 alleged hallway assault, Greene's written warnings, and Stewart's June 2014 suspension.

### ii. Sex-Based Hostile Work Environment (Count I)

Under Title VII, an employer may not "fail or refuse to hire or to discharge . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). This protection prohibits an employer from creating an "abusive working environment" in which the "workplace is permeated with discriminatory [sex-based] intimidation, ridicule, and insult[.]" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To demonstrate a prima facie case of hostile work environment sexual harassment, Stewart must show: "(1) that he was subjected to unwelcome conduct; (2) the unwelcome conduct was based on sex; (3) it was sufficiently pervasive or severe to alter the conditions of employment and to create a hostile work environment; and (4) some basis exists for imputing liability to

the employer." *Rachel–Smith v. FTData, Inc.,* 247 F. Supp. 2d 734, 749 (D. Md. 2003) (citing *Smith v. First Union Nat'l Bank,* 202 F.3d 234 (4th Cir. 2000)).

Plaintiff's Complaint faces several difficulties. First, he alleges only three specific discriminatory incidents within the statutory period relevant to this claim – the August 2013 hallway assault, Greene's written warnings, and his June 2014 suspension – instead referring throughout the Complaint to general and unnamed harassment and retaliatory behavior. Although an employment discrimination plaintiff need not prove each element of a prima facie case in his complaint, *Iqbal* and *Twombly* require sufficient detail to make the complaint plausible, not merely possible. *See Iqbal*, 556 U.S. at 678. Stewart's generalized and unspecified assertions do not suffice to support a plausible claim for relief. This Court must thus consider only the hallway assault, the written warnings, and the June 2014 suspension as the "offending conduct" at issue.

Even given these incidents, Stewart's claims are deficient, as he fails to allege facts sufficient to support an inference of sex-based discrimination. He speculates as to Defendants' motives, but simply omits any facts connecting the hallway assaults, written warnings, and June 2014 suspension to his sex. *See Nicole v. Grafton School, Inc.*, 181 F. Supp. 2d 475, 483 (D. Md. 2002) (holding that a sex-based hostile work environment may not be supported where plaintiff provided no facts, "apart from her own speculation," that the offending conduct was sex-based). Mere conjecture, without more, does not establish a plausible connection between the incidents and sex-based motivation.

Moreover, Stewart fails to allege any facts with respect to whether the offending conduct was "sufficiently pervasive or severe." Stewart simply states that he was subject to

"further harassment and retaliatory behavior." *See* Compl. ¶ 46. Such conclusory allegations cannot suffice, as even an employment discrimination plaintiff must allege more than "[t]hreadbare recitals of a cause of action's elements." *Iqbal*, 556 U.S. at 678.

Finally, Stewart fails to allege facts sufficient to impute liability to the City. A hostile work environment may be imputed to the employer if the employer knew of the offending conduct but did not "respond with remedial action." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 319 (4th Cir. 2008) (finding that once an employer has notice of harassment of an employee by co-employees, it must respond with remedial action reasonably calculated to end the harassment in order to avoid liability under Title VII). Stewart fails to allege any notice of sexual harassment to management until June 2014, when he for the first time reported Murray's alleged harassment of May 2012. This Court however, lacks subject matter jurisdiction over that incident.  Indeed, even assuming that the hallway contact with Banks reflected a sex-based hostile work environment, Stewart's superiors promptly addressed his concern by both instructing him to contact the Employee's Assistance Program and ordering Banks to apologize for his conduct in that and any future cases. While the Plaintiff labels this action as nominal and inadequate, he omits any subsequent harassing acts directed toward him by Banks.

Due to Stewart's failure to allege any facts related to the second, third, and fourth elements of a sex-based hostile work environment claim, he has failed to state a claim upon which relief may be granted. Count I is accordingly DISMISSED with respect to the sex-based hostile work environment claim.

### iii.   Failure to Investigate (Count V)

Count V of the Plaintiff's Complaint is similarly deficient. Stewart contends that the City's alleged failure to investigate his claims violates Title VII. Yet, he specifically references an investigation conducted by both the DHR and the BCPD into his discrimination allegations. *See* Compl. ¶ 31, 34, 44; Compl. Attach. 1, ECF No. 1-2. Plaintiff makes no mention of any other incidents where he requested an investigation and the City failed to act. Accordingly, Count V of the Complaint is DISMISSED.

### iv.  Retaliation under Title VII (Counts I & IV)[6]

In moving to dismiss Plaintiff's claims of retaliation, the City argues that Stewart pleads no facts that demonstrate a causal connection between his protected activity and any adverse employment actions. Under Title VII, an employer may not discriminate against an employee who "has opposed any . . . unlawful employment practice" covered by the statute. 42 U.S.C. § 2000e-3(a). To state a claim of retaliation under Title VII, a plaintiff must show that "(1) she engaged in protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action." *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008) (citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007)). A plaintiff's conclusory assertion on the existence of a causal connection is insufficient, although a "close" temporal relationship between the protected activity and the alleged adverse action, may suffice to establish a causal connection at the pleading stage. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (holding that alleged "temporal proximity" must be "very close" to satisfy this third element, however

---

[6] *See supra* note 3.

"[k]nowledge of a charge is essential to a retaliation claim."); *see also Dowe v. Total Action against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998).

The City does not dispute that Stewart engaged in protected activity when he filed his charge of discrimination with the EEOC, nor does it contend that his termination did not constitute adverse action. Rather, the City argues that Stewart provides no facts to indicate a causal connection between the protected activity and the adverse action. While this Court notes some temporal proximity, Stewart makes no specific allegations tending to show that his termination was causally connected to his protected EEOC activity. By his own admission, the EEOC right-to-sue letter is dated August 14, 2014, whereas Stewart was dismissed in June 2014. *See* EEOC Letter, at 2. Plaintiff never alleges, however, that the City had any knowledge of the EEOC investigatory process, nor that Plaintiff had filed a charge with the EEOC, prior to terminating Stewart. *Id.* The bare temporal proximity between Plaintiff's protected actions and his termination does not rise to that level required by this claim's third prong.

Accordingly, Plaintiff's retaliation claims in Counts I and IV are DISMISSED.

## II.    Section 1983 (Count II)

42 U.S.C. § 1983 provides that "every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. § 1983. In order to state a claim under Section 1983, a plaintiff must allege (1) a deprivation of a right or privilege secured by the Constitution and laws of the United States

and that (2) the deprivation was caused by an individual acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988). However, "merely private conduct, no matter how discriminatory or wrongful[,]'" fails to constitute state action. *See Mentavlos v. Anderson,* 249 F.3d 301, 301 (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999)) (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1002 (1982)). "[P]rivate activity will generally not be deemed "state action" unless the state has so dominated such activity as to convert it to state action: 'Mere approval of or acquiescence in the initiatives of a private party is insufficient.'" *Wahi v. Charleston Area Med. Ctr., Inc.,* 562 F.3d 599, 616 (4th Cir. 2009) (quoting *DeBauche v. Trani,* 191 F.3d 499, 507 (4th Cir. 1999)).

While under *Monell v. Dep't of Social Servs. Of City of New York,* 436 U.S. 658 (1978), Section 1983 liability against a local government or municipality may arise when execution of the government's unconstitutional policy or custom causes a plaintiff injury, *see Walker v. Prince George's Cnty., Md.,* 575 F.3d 426, 431 (4th Cir. 2009), in order to support a claim, "(1) the municipality must have actual or constructive knowledge of the custom and usage by its responsible policymakers, and (2) there must be a failure by those policymakers, as a matter of specific intent or deliberate indifference, to correct or terminate the improper custom and usage." *Randall v. Prince George's Cnty., Md.,* 302 F.3d 188, 210 (4th Cir. 2002) (internal quotation marks omitted). When a plaintiff brings a "custom or usage" claim under *Monell,* the alleged practice must be "so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'" *Lytle v. Doyle,* 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris,* 164 F.3d 215, 217 (4th Cir. 1999)).

The Complaint utterly fails to allege any facts indicating that the individual Defendant's actions were taken under the color of state law. Further, Stewart's bare assertion that "[t]he discrimination stemmed from a custom, policy or practice of the City of Baltimore, and not from an individual aberration of isolated act, even one committed under color of law" (Compl. ¶ 58), lacks the specificity required to nudge Stewart's allegations from conceivably performed to plausibly performed if interpreted as a custom or usage claim. *See Iqbal*, 556 U.S. at 678; *Wag More Dogs*, 680 F.3d at 365; *Lytle,* 326 F.3d at 471. Accordingly, Count II is DISMISSED.

### III.    State Law Claims (Counts III, IV, & VI)

Pursuant to 28 U.S.C. § 1367, a federal court may exercise supplemental jurisdiction over claims that otherwise would not be within federal jurisdiction, because the claims arise from the same set of facts as those claims that are properly before the federal court. *See generally* 13 C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3523 (1984); ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 5.4 (4th ed. 2003); *cf.* 28 U.S.C. 1367 (2000). However, under 28 U.S.C. § 1367(c)(3), a federal court has the discretion to decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction. *Hilliard v. Kaiser Found. Health Plan of the Mid–Atlantic States,* 169 F. Supp.2d 416, 418–19 (D. Md. 2001). The United States Supreme Court has cautioned against the use of supplemental jurisdiction and suggested that in cases where the federal claims are dismissed before trial, "the state claims should be dismissed as well." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *see also Walker v. City of Salisbury,* 170 F. Supp. 2d 541, 552 (D. Md. 2001)

(declining to exercise pendent jurisdiction over plaintiffs' remaining state law claims when the court granted defendants' motion to dismiss all of plaintiffs' federal claims against the defendant).

As the federal claims against the Defendants have been dismissed, the only remaining claims sound in Maryland state law. Consequently, this court declines to exercise supplemental jurisdiction over these claims and DISMISSES them WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1367(c)(3); *see e.g., Hinson v. Norwest Financial South Carolina, Inc.,* 239 F.3d 611, 616 (4th Cir. 2001) (holding that under 28 U.S.C. § 1367(c) a district court has discretion to remand removed state claims when the federal claims drop out of the case) (citing *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 357 (1988)).

<u>CONCLUSION</u>

For the reasons stated above, Defendants' Motion to Dismiss (ECF No. 9) is GRANTED and the Plaintiff's Complaint is DISMISSED.

A separate Order follows.

Dated:    Sept 23, 2015                          /s/_____

                                          Richard D. Bennett
                                          United States District Judge